UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Charles Chandler,                    :
          Plaintiff,                 :
                                     :
          v.                         :    File No. 1:07-CV-251
                                     :
William Sorrell, Michael             :
Fontaine, Wayne Winot,               :
Robert Holden, John                  :
Feifel, Village of                   :
Newfane, Vermont, Shiela             :
Prue, Sherwood Lake, Jr.,            :
Jeromy Languerand, Dan               :
Davis, Tracy Shriver,                :
Michael Burns, Alan Sands,           :
Vermont State Police,                :
State of Vermont,                    :
          Defendants.                :

OPINION AND ORDER
(Papers 18, 21, 30, 31 and 38)

Plaintiff Charles Chandler, proceeding *pro se*, brings this
action claiming that various state and municipal officials have
committed crimes and violated his rights.  Three motions to
dismiss are currently pending before the Court.  First, state
defendants William Sorrell, Dan Davis, Tracy Shriver, Michael
Burns, Alan Sands, the Vermont State Police and the State of
Vermont (collectively "State Defendants") cite sovereign
immunity, absolute and qualified immunity, issue preclusion and
ripeness as grounds for dismissal.  Second, defendants Sheila
Prue, Sherwood Lake, Jr. and Jeromy Languerand (collectively
"Sheriff Defendants") argue that because Chandler is currently
litigating a state court case against them, and because the
claims in that case are nearly identical to those brought here,

this Court should abstain from hearing Chandler's complaint.
Third, the Town of Newfane contends that none of the defendants
were its employees or agents.  Chandler concedes that the Town of
Newfane should be dismissed from the case.  Also pending before
the Court is Chandler's motion for preliminary injunctive relief,
in which he requests that the Court bar several defendants and a
non-party from entering his property.  For the reasons set forth
below, the motions to dismiss, with the exception of the motion
filed by defendant Sands in his individual capacity, are GRANTED,
and the motion for a preliminary injunction is DENIED.

<u>Factual Background</u>

For purposes of the pending motions to dismiss, the
allegations in the complaint will be accepted as true.  On March
30, 2006, Chandler was at his place of business in Newfane,
Vermont preparing for a company barbeque.  Defendant John Feifel
drove past the property and returned approximately one hour later
with defendants Michael Fontaine, Wayne Winot and Robert Holden,
all of whom, including Feifel, were volunteer firemen.  The
firemen stated that they had received a report that Chandler was
burning brush, and that they had come to put the fire out.  When
Chandler explained that he was preparing for a barbeque and was
not burning brush, the firemen allegedly "became extremely
hostile toward [Chandler] and his family" and threatened physical

2

harm.  The complaint also alleges that defendant Winot swung his
fist at Chandler's brother.

When Chandler ordered the firemen off of his property, they
initially refused to leave and continued their hostile behavior.
Chandler called toward his place of business with the hope that
someone would call the police.  When it was announced that the
police were on their way, the firemen eventually moved to the
other side of the street to wait for the police to arrive.

Within a few minutes, defendant Deputy Jeromy Languerand of
the Windham County Sheriff's Department arrived and spoke with
Chandler and the firemen.  After Deputy Languerand refused to
take action, stating that "'these are my friends and I'm not
going to arrest them,'" Chandler called the Vermont State Police.
Languerand informed Chandler that if he did not "drop this
matter" he would charge Chandler with impeding a public officer.
Both Chandler and Languerand spoke with the State Police, who
informed Chandler that they would not be responding.

Vermont Fire Marshal Alan Sands, also a defendant in this
case, subsequently arrived at the scene.  Sands told Chandler
that he had "'better put your camp fire out and knock off the
bullshit.'"  Chandler asserted his right to have a cookout on his
property, and threatened to sue the firemen if they did not leave
him alone.  Sands reportedly told Chandler that if he filed suit,
"'that would be very bad for [Chandler's electrical] business,

3

I'll see to it myself personally.'"  The complaint does not explain how the events on March 30, 2006 concluded, except that Deputy Langeurand, under direction from Deputy Sherwood Lake, allegedly filed a report against Chandler for impeding an officer.

On April 6, 2006, Chandler received a call from Deputy Lake. Lake referred to the March 30, 2006 incident as a "misunderstanding" and offered to "forget about" it if Chandler made a $1,000 contribution to a community enrichment program set up by Sheriff Sheila Prue.  When Chandler inquired about his scheduled court date, Lake responded that the date was merely a joke, and that Deputy Languerand would not file his affidavit with the court if Chandler made the requested payment.  When Chandler asked about how he should pay, Lake informed him that the program involved only a few individuals at the Sheriff's Department, that the payment should be made in cash, and that someone would come to "[Chandler's] place and pick it up."

Chandler claims that Sheriff Prue and Deputy Lake contacted him two more times, in January and February 2006, seeking additional cash donations.  The donations were to be for a "Heat Up Vermont" program, and the requests were for $250 and $350. Chandler made the donations, but alleges that the money was not given to the heating program.

On May 16, 2006, Chandler went to the office of the Windham
County Sheriff's Department and requested that six trespass
notices be served.  He was informed by a deputy in the office
that Sheriff Prue would not serve the notices.  Chandler
complained to Windham County State's Attorney Dan Davis and
Vermont Attorney General William Sorrell, but received no
assistance.

Chandler further claims that Attorney General Sorrell
assigned Michael Burns of the Vermont State Police "to cover up
an allegation of Police Misconduct in Windham County, Vermont."
Chandler alleges that while Burns was tasked with conducting an
investigation of Sheriff Prue's office, the investigation was a
sham.  Specifically, Chandler claims that Burns never spoke with
either Prue or the bookkeeper at the Sheriff's Department, and
declined an offer from a Newfane resident who offered to assist
with capturing Lake and Prue on video while in the act of
soliciting money.  As a result of this alleged conduct, which
Chandler believes may have included taking money from Lake and
Prue, Chandler charges that Burns is an accessory to the claimed
wrongdoing.

Chandler has filed at least two state court cases arising
out of the same facts alleged in his current complaint.  On June
6, 2006, he filed a complaint in Windham Superior Court against
Sheila Prue, Sherwood Lake, and Jeromy Languerand, setting forth

5

essentially the same claims of inappropriate conduct as those alleged in this case.  The defendants report that the state court case is ongoing.

On March 30, 2007, Chandler filed suit against Michael Burns and two other individuals who are not parties here.  As interpreted by Judge David Howard of the Windham Superior Court, the claims against Burns amounted to allegations of perjury, malicious prosecution and failure to properly investigate.  Judge Howard granted a motion to dismiss the case, first concluding that perjury is not privately actionable.  As to the claim for malicious prosecution, he deemed the claim premature because criminal charges brought against Chandler were still pending. Finally, Judge Howard found that defendant Burns owed no duty to Chandler with respect to the investigation of alleged wrongdoing by members of the Windham County Sheriff's Department.  There is no indication in the record of an appeal.

Chandler filed his complaint in this case on November 20, 2007.  Defendants Fontaine, Winot, Holden and Feifel have not yet answered the complaint.[1]  The Court now considers the remaining defendants' motions to dismiss, and Chandler's request for immediate injunctive relief.

---

[1]  These defendants did appear for the limited purpose of opposing the motion for a preliminary injunction.

<u>Discussion</u>

I.   <u>Motion to Dismiss Standard</u>

On a motion to dismiss, the Court must accept as true the factual allegations in the complaint, and must draw all inferences in the plaintiff's favor.  <u>See</u> <u>Allaire Corp. v. Okumus</u>, 433 F.3d 248, 249-50 (2d Cir. 2006).  To survive dismissal, a complaint must plead enough facts to be plausible on its face.  <u>Ruotolo v. City of New York</u>, 514 F.3d 184, 188 (2d Cir. 2008) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007)).

II.  <u>Sheriff Defendants' Motion to Dismiss</u>

The Sheriff Defendants argue that this Court should abstain from hearing claims that are duplicative of those currently pending in state court.  In his state court complaint (Paper 30-2), Chandler charged defendants Prue, Lake and Langeurand of theft by extortion and of violating his state constitutional rights.  As in this case, the facts revolve around events beginning with Languerand's actions on Chandler's property on March 30, 2006, and carry through to the alleged requests for contributions to Sheriff-selected charities.  Significant portions of the state court complaint are repeated, nearly *verbatim*, in Chandler's federal complaint.

The Sheriff Defendants rely primarily on the abstention doctrine set forth in <u>Colorado River Water Conservation Dist. v.</u>

United States, 424 U.S. 800 (1976). In that case, the Supreme Court stated that, as a general rule, federal courts have an "unflagging obligation . . . to exercise the jurisdiction given them." Colorado River, 424 U.S. at 817. However, when parallel state court proceedings exist, and exceptional circumstances warrant, a federal district court may decline to exercise its jurisdiction over a particular matter. Id. at 818. Declining jurisdiction in light of parallel or duplicative state court proceedings is in "the interests of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id. at 817 (quotation marks and citation omitted).

"To determine whether abstention under Colorado River is appropriate, a district court is required to weigh six factors, with the balance heavily weighted in favor of the exercise of jurisdiction." Village of Westfield v. Welch's, 170 F.3d 116, 121 (2d Cir. 1999) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983)). These factors are:

> (1) the assumption of jurisdiction by either court over any res or property;
>
> (2) the inconvenience of the federal forum;
>
> (3) the avoidance of piecemeal litigation;
>
> (4) the order in which jurisdiction was obtained;
>
> (5) whether state or federal law supplies the rule of decision; and

> (6) whether the state court proceeding will adequately
> protect the rights of the party seeking to invoke
> federal jurisdiction.

Id.  "No single factor is necessarily decisive, . . . and the
weight to be given to any one factor may vary greatly from case
to case, depending on the particular setting of the case."  Id.
Additionally, a "necessary prerequisite to abstention under
Colorado River" is "a finding that the concurrent proceedings are
'parallel.'"  Dittmer v. Cty. of Suffolk, 146 F.3d 113, 117-18
(2d Cir. 1998).  "Suits are parallel when substantially the same
parties are contemporaneously litigating substantially the same
issue in another forum."  Id. (quoting Day v. Union Mines Inc.,
862 F.2d 652, 655 (7th Cir. 1988)).

In this case, jurisdiction over property is not an issue.
Thus, for purposes of the Colorado River analysis, the first
factor weighs slightly against abstention.  The second factor,
inconvenience of a federal forum, is also a non-issue, since a
federal forum is just as convenient as a state forum for all
parties in this case.  Accordingly, the second factor also weighs
against abstention.

The third factor, avoidance of piecemeal litigation, falls
strongly in favor of abstention.  Given the Supreme Court's
acknowledgement that "the most important factor in our decision
to approve the dismissal [in Colorado River] was the 'clear
federal policy . . . [of] avoidance of piecemeal litigation,'"

the Court is justified in giving this factor significant weight.
Moses H. Cone Mem'l Hosp., 460 U.S. at 16 (quoting Colorado
River, 424 U.S. at 819).    Chandler's two actions against the
Sheriff Defendants involve the same parties and nearly identical
claims.  Differences in the claims include, in this case, a
federal Racketeer Influenced and Corrupt Organizations ("RICO")
Act claim and constitutional claims under § 1983, while the state
case contains state constitutional and common law claims.
Nonetheless, all claims arise out of the same facts, and both
cases were brought by the plaintiff against the three Sheriff
Defendants.  Accordingly, it is fair to characterize the two
actions as "piecemeal litigation."

       The Second Circuit has noted that "[m]aintaining virtually
identical suits in two forums . . . would waste judicial
resources and invite duplicative effort."  Akwright-Boston Mfrs.
Mut. Ins. Co. v. City of New York, 762 F.2d 205, 211 (1985); see
also Goldentree Asset Mgmt., L.P. v. Longaberger Co., 448 F.
Supp. 2d 589, 594 (S.D.N.Y. 2006).  To allow this case to proceed
against the Sheriff Defendants would frustrate the policy
considerations so plainly set forth by the Supreme Court and the
Second Circuit.  The Court will, therefore, consider this factor
as weighing heavily in favor of abstention.

       The fourth factor, order in which jurisdiction was obtained,
also favors abstention.  When assessing this factor, "priority

should not be measured exclusively by which complaint was filed
first, but rather in terms of how much progress has been made in
the two actions." <u>Moses H. Cone Mem'l Hosp.</u>, 460 U.S. at 21.
Chandler filed his state court case action against the Sheriff
Defendants in June 2006, approximately a year and a half before
he brought the instant case.  The defendants report that "a lot
of activity transpired" in the nearly two years since, including
"rampant" motions practice and various "atypical litigation
tactics."  Currently pending in state court is defendants' motion
to dismiss, filed prior to the complaint in this case.

Other than the filing of motions to dismiss, there has been
little meaningful activity in this case.[2]  As compared to the
state court case, activity here has been minimal.  In <u>Colorado
River</u>, the Supreme Court found "the apparent absence of any
proceedings in the District Court, other than the filing of the
complaint, prior to the motion to dismiss" a "significant" factor
in favor of abstention.  424 U.S. at 820.  The Court therefore
finds that this factor weighs in favor of abstention.

The fifth factor, whether state or federal law supplies the
rule of decision, weighs against abstention.  The Supreme Court
has ruled that "the presence of federal law issues must always be
a major consideration weighing against surrender."  <u>Moses H. Cone</u>

---

[2]  The other notable filing is Chandler's motion for
injunctive relief.

<u>Mem'l Hosp.</u>, 460 U.S. at 25.  The claims aimed at the Sheriff Defendants are set forth in the complaint's second and third causes of action.  In the complaint's "Second Claim for Relief," Chandler cites Vermont case law for the proposition that Languerand had no right to close his business or be on his property.  (Paper 1 at 19).  He also alleges that Languerand's goal was "to embarrass, humiliate, harass, intimidate and unlawfully seize the Plaintiff's image."  While Chandler seeks damages under 42 U.S.C. § 1983, he does identify any specific constitutional violations.[3]

In the complaint's "Third Claim for Relief," Chandler charges Prue, Lake and Languerand of violating federal criminal extortion and racketeering laws.  <u>Id.</u> at 20.  He makes these same allegations in his state court complaint.  (Paper 30-2 at 4).  He also accuses the defendants of common law violations such as harassment and intentional infliction of emotional harm.  He again seeks relief under § 1983 without citing any specific constitutional violations.  Accordingly, his claims contain a mix of state and federal claims.  Given the lack of specificity with respect to the constitutional claims, however, the Court is reluctant to give significant weight to this factor.

---

[3]  Elsewhere in the complaint Chandler states generally that the various law enforcement and prosecutorial defendants denied him "equal protection of the law as well as . . . other civil rights that the Plaintiff is entitled to for example United States Constitutional amendments 1, 4, 14."  (Paper 1 at 15).

Nonetheless, the existence of federal civil claims weighs slightly in favor of retaining jurisdiction.

The sixth factor is the adequacy of procedures in state court to protect the plaintiff's rights.  The Vermont courts have concurrent jurisdiction for claims brought under the RICO statute and under § 1983.  See Tafflin v. Levitt, 493 U.S. 455, 458 (1990) (holding that federal and state courts have concurrent jurisdiction over RICO claims); Felder v. Casey, 487 U.S. 131, 147 (1988) (federal and state courts have concurrent jurisdiction over § 1983 claims).  Chandler has not offered any argument why, if he amends his complaint, his claims cannot be adequately heard in state court.  Therefore, this factor weighs in favor of abstention.  See, e.g., Goldentree Asset Mgmt., L.P., 448 F. Supp. 2d at 595.

On balance, the multi-factor test favors abstention.  The state and federal cases are clearly "parallel."  Factors three, four and six weigh in favor of abstention, with factors three and four, and their associated concerns about avoiding piecemeal litigation in a subsequent case, carrying particular weight. Factor one and two are essentially neutral, while the presence of general federal claims against this group of defendants weighs only slightly in favor of retention.  Ultimately, the Court finds that Chandler has consciously engaged in piecemeal litigation, while the state court suit he initiated many months ago can

13

accommodate all of his claims.  The Sheriff Defendants' motion to dismiss on grounds of abstention is, therefore, GRANTED.

III.  State Defendants' Motion to Dismiss

The State Defendants offer several arguments in support of their motion to dismiss.  The first is premised upon Vermont's immunity from suit in federal court, and applies to Chandler's claims for damages under 42 U.S.C. § 1983.  Pursuant to the doctrine of sovereign immunity, the Eleventh Amendment bars suits by private citizens against a state or its agencies in federal court unless the state has waived its immunity or Congress has properly abrogated that immunity.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-99 (1984); Seminole Tribe v. Florida, 517 U.S. 44, 55 (1996).  The Eleventh Amendment also bars claims against state employees sued in their official capacities.  See Hafer v. Melo, 502 U.S. 21, 25 (1991); Pennhurst, 465 U.S. at 102.

In this case, it is clear that neither Vermont nor Congress has waived the sovereign immunity that protects the State Defendants from a damages action.  There is no indication in 42 U.S.C. § 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities such as state sovereign immunity when it enacted § 1983.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 67 (1989).

14

It is equally clear that Vermont has not waived its sovereign immunity under § 1983.  See 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not explicitly waived).  Furthermore, the Supreme Court has held that just as states and state agencies are not "persons" under § 1983, state officers acting in their official capacities are not "persons" within the meaning of the statute since they assume the identity of the government that employs them.  See Hafer v. Melo, 502 U.S. 21, 27 (1991).  Accordingly, Chandler's § 1983 damages claims against the State of Vermont, the Vermont State Police, and defendants Sorrell, Davis, Shriver, Burns and Sands in their official capacities, are DISMISSED.

The State Defendants also argue that defendants Sorrell, Davis and Shriver are entitled to absolute prosecutorial immunity.  Chandler's fundamental claim against these defendants is that they have suborned perjury in an effort first to blackmail him through threatened prosecution, and then to retaliate against him by filing criminal charges against him in state court.  In his "Fourth Claim for Relief," Chandler alleges that the State Defendants "orchestrated two individuals with criminal records to make false statements about the Plaintiff. The Defendants held on to these statements for 8 months in an effort to hold a blackmail/extortion scheme."  The scheme was allegedly an effort to pressure Chandler to "forget about" the

fraudulent actions of the Sheriff Defendants.  When Chandler refused to do so, and after he subpoenaed defendant Davis for a deposition, the State Defendants allegedly used the false statements as a basis for filing false and retaliatory charges against him.  (Paper 1 at 21).

All of Chandler's claims against defendants Sorrell, Davis and Shriver involve either potential or actual prosecution.  The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity.  See Peay v. Ajello, 470 F.3d 65, 67-68 (2d Cir. 2006).  The fact that the defendants knowingly used perjured testimony does not weaken their immunity from suit.  See Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir. 2005) ("A prosecutor is . . . entitled to absolute immunity despite allegations of his 'knowing use of perjured testimony' and the 'deliberate withholding of exculpatory information.'  Although such conduct would be 'reprehensible,' it does not make the prosecutor amenable to a civil suit for damages.") (quoting Imbler v. Pachtman, 424 U.S. 409, 431 n.34 (1976)).  Also, the fact that the defendants are alleged to have conspired as part of an "orchestrated" effort to deny Chandler his rights will not diminish the protections afforded by absolute prosecutorial immunity.  See Shmueli, 424 F.3d at 237-38.

16

The Second Circuit has explained that allowing prosecutors absolute immunity "does not leave the public powerless to deter misconduct or to punish that which occurs." Schloss v. Buse, 876 F.2d 287, 292 (2d Cir. 1989).[4]  Indeed, criminal statutes "furnish means to penalize prosecutors who make improper demands and to redress losses suffered by the victims of such demands." Id. (citing 18 U.S.C. § 872 forbidding extortion by officers or employees of the United States).  While the criminal laws serve to protect both the general public and individuals, they generally do not provide private rights of action.  See Thompson v. Thompson, 484 U.S. 174, 179 (1988).

Chandler's civil claims against defendants Sorrell, Davis and Shriver are barred by absolute prosecutorial immunity, and his claims against them are DISMISSED.

With respect to defendant Burns, Chandler has already sued him, unsuccessfully, in state court.  The state court summarized the factual allegations in that case as follows:

---

[4]  The Schloss case parallels Chandler's claims of extortion.  In Schloss, prosecutors were alleged to have offered to forego prosecution in exchange for signed releases in favor of certain policemen and municipalities.  The plaintiffs claimed that this constituted extortion and filed suit.  The Second Circuit denied the claim on the basis of absolute prosecutorial immunity, reasoning that the securing of releases was "not beyond the prosecutor's jurisdiction." Schloss, 876 F.2d at 290-93. Here, demands by prosecutors that a private citizen cease his investigation of public officials, though in some instances arguably reprehensible, would be equally within those prosecutors' jurisdiction.

> To the best of the Court's ability, it appears from
> [the complaint's] recitation that Plaintiff alleges
> Burns played an improper role in investigating a
> complaint which Plaintiff had filed against former
> Sheriff Sheila Prue and former Deputy Sherwood Lake
> regarding an illicit fundraising scheme.  The alleged
> impropriety includes making false statements, suborning
> false statements from [Burns' co-defendants in the
> state court case], and the malicious prosecution of
> Plaintiff in a related matter.

(Paper 18-3 at 2).  The state court dismissed the complaint,
concluding (1) that suborning prejury is a criminal offense with
no private right of action, (2) that Chandler had failed to show
malicious prosecution since the prosecutions against him had not
terminated in his favor, and (3) that Burns owed Chandler no
personal duty of care with respect to the investigation of Prue
and Lake.  Id. at 4-7.

The State Defendants submit that, under Vermont law,
Chandler's current claims against Burns are barred by claim
preclusion.  The Full Faith and Credit Clause requires that a
federal court give the same preclusive effect to a state judgment
as would be ascribed by that state court.  Migra v. Warren City
Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984) (citing Allen v.
McCurry, 449 U.S. 90, 96 (1980)).  The Second Circuit has noted
that state law governs the preclusive effect to be given to a
state court determination.  Marvel Characters, Inc. v. Simon, 310
F.3d 280, 286 (2d Cir. 2002).  In Vermont, a claim is precluded
"if there exists a final judgment in former litigation in which
the parties, subject matter, and causes of action are identical

18

or substantially identical." <u>Kellner v. Kellner</u>, 176 Vt. 571, 573 (2004) (applying res judicata).  Claim preclusion "also bars parties from litigating claims that the parties should have raised in a previous proceeding." <u>Bidgood v. Town of Cavendish</u>, 179 Vt. 530, 531 (2005).

Here, it is plain that the parties and subject matter are "substantially identical."  Chandler is again suing Burns for his role in investigating Prue and her department, and seeks damages for harm arising out of Burns' alleged misconduct.  While the causes of action may differ, focusing here on RICO and § 1983 violations, those claims could have and should have been raised in the state court litigation.  The claims against Burns are, therefore, precluded.

The final State Defendant is Fire Marshal Sands.  Sands' motion to dismiss (Paper 21) incorporates the arguments set forth by the other State Defendants in their motion.  However, the claims brought against Sorrell, Davis, Shriver and Burns are quite different from those asserted against Sands.  As a result, the defenses raised by those defendants are not clearly applicable.

The allegations against Sands are set forth in the complaint's "First Claim for Relief," and focus on his statements at Chandler's place of business on March 30, 2006.  There is no claim of a RICO violation, and there is clear personal

involvement for purposes of § 1983.  Accordingly, the State
Defendants' arguments with respect to Chandler's RICO and § 1983
claims cannot be applied to defendant Sands.

Furthermore, absolute prosecutorial immunity does not
pertain to a Fire Marshal.  As to qualified immunity, Sands has
not offered any specific arguments in support of his entitlement
to this defense.  Finally, because Sands was not involved in
Burns' investigation of the Sheriff Defendants, the claims
against him are not precluded by prior litigation.  The motion to
dismiss brought on behalf of defendant Sands in his individual
capacity is, therefore, DENIED.  The State Defendants' motion to
dismiss is otherwise GRANTED.

IV.   Town of Newfane's Motion to Dismiss

The Town of Newfane submits that it is not a proper party in
this case because the volunteer firemen were not associated with
the Town.  Chandler concedes that the Town should be dismissed as
a party.  The Town's motion to dismiss is GRANTED.

V.   Motion for Preliminary Injunction

Approximately two months after filing suit, Chandler filed a
motion for emergency injunctive relief.  The motion alleges that
on January 15, 2008, Vern Carey, a member of the NewBrook
Volunteer Fire Department along with defendants Fontaine, Winot,
Holden, and Feifel, called Chandler at his place of business and
threatened to kill him.  Carey subsequently arrived at Chandler's

20

workplace and attacked him with a "large black dead blow hammer."
Chandler wrestled Carey to the floor, and with the help of a co-
worker was able to subdue him until the police arrived.  Before
leaving the scene, Carey warned that "the guys at the station"
would be causing Chandler further harm.

   Chandler's motion seeks a protective order barring "Mr.
Carey and the Defendants from coming to the Plaintiff's
Home/Business . . . or any other property under the control of
the Plaintiff . . . until further order of the Court."  (Paper
31).  Carey is not a party in this case.  As to existing
defendants, the motion does not allege any new or continuing
conduct by those defendants.  Although Carey allegedly made
threats of potential harm by other firemen, Chandler has offered
no evidence to show that those firemen  share Carey's desire to
cause him harm.  A "hypothetical" or "conjectural" threat of
injury is insufficient to support a court-imposed injunction.
See O'Shea v. Littleton, 414 U.S. 488, 494 (1974).

   Furthermore, the alleged attack by Carey took place nearly
two years after the March 2006 incident alleged in the complaint.
According to the motion, Carey's conduct was brought on by a
dispute with Chandler's brother.  Based upon the current record,
the Court cannot conclude that Carey's attack is in any way
related to the events of March 30, 2006.  See Chavis v. Ryan,
2007 WL 446440, at *1 (N.D.N.Y. Feb. 7, 2007) ("the relief that a

21

plaintiff seeks by way of injunction must relate to the allegations contained in the underlying complaint").

"[A] preliminary injunction is an extraordinary remedy that should not be granted as a routine matter."  JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 80 (2d Cir. 1990).  Here, the Court has no jurisdiction over Carey since he is not a party, and the record is insufficient to support an injunction against any existing defendants.  Chandler's motion for a preliminary injunction is, therefore, DENIED.

### Conclusion

For the reasons set forth above, the motions to dismiss filed by defendants Sorrell, Davis, Shriver, Burns, the Vermont State Police and the State of Vermont (Papers 18), defendants Prue, Lake and Languerand (Paper 30), and the Town of Newfane (Paper 38) are GRANTED.  The motion to dismiss defendant Sands (Paper 21) is GRANTED with respect to claims brought against him in his official capacity, and DENIED with respect to claim brought against him in his individual capacity.  Chandler's motion for injunctive relief and a protective order (Paper 31) is DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 21st day of May, 2008.

/s/ J. Garvan Murtha
J. Garvan Murtha, U.S. District Judge

22